NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0124n.06

No.14-3355

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
**Feb 11, 2015**
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ERIC A. JACKSON, | ) | |
| | ) | |
| **Petitioner-Appellant,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE SOUTHERN |
| | ) | DISTRICT OF OHIO |
| WARDEN, CHILLICOTHE CORRECTIONAL INSTITUTION, | ) | |
| | ) | **OPINION** |
| **Respondent-Appellee.** | ) | |
| | ) | |

Before: DAUGHTREY, MOORE, and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.** Eric A. Jackson appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(d) based on an ineffective-assistance-of-counsel claim. For the reasons set forth in this opinion, we **AFFIRM** the district court's judgment.

## I. BACKGROUND

The parties do not dispute the following facts. "Jackson shot his mother, Donna Levan . . . , with a sawed-off twelve-gauge shotgun" on October 15, 2002. R. 9-2 (Journal Entry, June 22, 2009 at 1) (Page ID #361). "The shooting occurred in the parking lot of Levan's place of employment, the Heartland of Marysville Nursing and Rehabilitation Center, in Marysville, . . . Ohio." *Id.* "At the time of trial, there were no witnesses to the shooting." *Id.* Jackson drove

away after the shooting, and soon afterwards a Union County Deputy Sheriff pulled him over and arrested him. *Id.* "Levan died nine days after the shooting." *Id.*

Jackson was indicted for one count of "Aggravated Murder . . . with Firearm Specification" and one count of "Unlawful Possession of Dangerous Ordnance" on October 24, 2002. R. 9-1 (Indictment) (Page ID #54). Jackson entered a written plea of not guilty and not guilty by reason of insanity. R. 9-1 (Written Plea at 1) (Page ID #57). After the conclusion of the trial, the jury found Jackson guilty on both counts. R. 9-1 (Journal Entry of Sentence, June 27, 2003 at 1) (Page ID #65). Jackson's direct appeal did not raise an ineffective-assistance-of-counsel claim. R. 9-1 (Op., Aug. 2, 2004) (Page ID #162–71).

On February 26, 2004, Jackson petitioned the trial court under Ohio Rule of Criminal Procedure 33(B) for leave to file a motion for a new trial. R. 9-1 (Mot., Feb. 26, 2004 at 1) (Page ID #173). Under that rule, a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict was rendered, unless the defendant establishes "by clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence." R. 9-1 (Ohio's Mem. in Opp'n to Mot. at 153) (Page ID #206) (quoting Ohio R. Crim. P. 33(B)). Jackson argued that, after the 120-day deadline, an eyewitness to the shooting, Kaci Chaffin, whom neither the police nor Jackson's trial counsel had discovered, came forward. *Id.* In relevant part, her affidavit stated that, on the day of the shooting, Chaffin:

> [S]aw Donna fighting with her son. Mr. Jackson had a shotgun pointed to his own head. Donna was trying to pull the shotgun away from him. As Donna

> struggled with her son, the gun discharged and shot her hand off. At no time did Mr. Jackson appear to point the gun at his mother.

R. 9-2 (Chaffin Aff. ¶¶ 5–6) (Page ID #355). In a one-sentence entry, the trial court denied Jackson's motion as untimely. R. 9-1 (Entry, Mar. 2, 2004) (Page ID #209). The Ohio Court of Appeals affirmed the trial court, and the Ohio Supreme Court denied review. R. 9-1 (Op., Sept. 27, 2004 at 8) (Page ID #299); R. 9-1 (Order, Mar. 2, 2005) (Page ID #344).

Jackson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on April 16, 2004. R. 9-2 (Post-Conviction Pet. at 1) (Page ID #345). Jackson asserted one ground for relief, that he was denied effective assistance of counsel under the United States Constitution and the Ohio Constitution. *Id.* at 5 (Page ID #349). Jackson's petition included an affidavit from his trial counsel stating that he had "reviewed the affidavit of Kaci Chaffin" and "[t]hat had Kaci Chaffin been discovered or otherwise identified there is a reasonable probability that her testimony, as set forth in the affidavit, would have altered the theory of the defense; she would have been called as a defense witness; and that said testimony would have resulted in Mr. Jackson not being convicted of Aggravated Murder." R. 9-2 (Holtschulte Aff. ¶¶ 9–10) (Page ID #354). Jackson's trial counsel also admitted that he had reviewed only the discovery provided by the prosecution regarding potential eyewitnesses to the shooting and "no action was taken to search for other witnesses that had not been identified, discovered or voluntarily come forward." *Id.* ¶¶ 6, 8 (Page ID #353–54).

On June 22, 2009, the Ohio trial court denied Jackson's petition without a hearing but issued an opinion on the merits. R. 9-2 (Journal Entry, June 22, 2009 at 5) (Page ID #365).

3

Jackson appealed, and on November 9, 2009, the Ohio Court of Appeals held that the trial court did not abuse its discretion in denying Jackson's post-conviction petition or in denying the petition without a hearing. R. 9-2 (Op., Nov. 9, 2009 at 18) (Page ID #536). The Ohio Supreme Court denied Jackson's appeal in a one-sentence entry. R. 9-2 (Entry, Mar. 10, 2010) (Page ID #577) (stating that "the Court denies leave to appeal and dismisses the appeal as not involving any substantial constitutional question").

Jackson filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio on January 24, 2011. R. 2 (Pet. for a Writ of Habeas Corpus) (Page ID #2). He asserted one ground for relief:

> Ground One: An attorney's pretrial investigation that fails to uncover an exculpatory, case-determinative eyewitness is not reasonable and denies a criminal defendant the effective assistance of counsel. *Strickland v. Washington* (1984), 466 U.S. 668; Sixth Amendment to the United States Constitution.

*Id.* at 14 (Page ID #15). The Magistrate Judge recommended denying the petition. R. 21 (Report and Recommendation at 25) (Page ID #1306). On March 14, 2014, the district court adopted the Magistrate Judge's report and recommendation and granted Jackson a certificate of appealability. R. 25 (Op. and Order at 1, 5) (Page ID #1321, 1325).

Jackson timely appeals the district court's decision, and "asks this Court to reverse the district court's denial of his petition for federal habeas corpus relief" based on a violation of his right to effective assistance of counsel. Appellant Br. at 12.

4

## II.  ANALYSIS

### A.  Standard of Review

We review the legal conclusions of the district court de novo and its factual findings for clear error in an appeal from the denial of habeas relief.  *Scott v. Houk*, 760 F.3d 497, 503 (6th Cir. 2014).  Neither party disputes that the Ohio courts adjudicated Jackson's ineffective-assistance-of-counsel claim on the merits in the post-conviction proceedings.  Appellant Br. at 3, 9–10; Appellee Br. at 15; *see also* R. 9-2 (Judgment Entry, June 22, 2009 at 4) (Page ID #364); R. 9-2 (Op., Nov. 9, 2009 at 11–18) (Page ID #529–36).  Therefore, the more deferential standard of review of the Antiterrorism and Effective Death Penalty Act ("AEDPA") applies.  28 U.S.C. § 2254(d) (2012).  AEDPA directs that a federal court cannot grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id*.  Only "holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision" constitute "clearly established Federal law."  *Williams v. Taylor*, 529 U.S. 362, 412 (2000).  Circuit court precedent "cannot form the basis for habeas relief under AEDPA."  *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012).

The "'contrary to' clause" applies "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts."

*Williams*, 529 U.S. at 412–13. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413). Unreasonable application means "more than incorrect or erroneous." *Id.* "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (internal quotation marks omitted). Moreover, § 2254(d)(1) "does not require state courts to *extend* [Supreme Court] precedent or license federal courts to treat the failure to do so as error." *White v. Woodall*, 134 S. Ct. 1697, 1706 (2014). As the Supreme Court has recently made clear, "[i]f this standard is difficult to meet, that is because it was meant to be." *Richter*, 131 S. Ct. at 786.

**B. *Strickland* Test**

The Supreme Court's holding in *Strickland v. Washington* provides the "clearly established Federal law" relevant to this case. *Williams*, 529 U.S. at 391 (internal quotation marks omitted). To prevail on an ineffective-assistance-of-counsel claim, a defendant must show two things. "First, the defendant must show that counsel's performance was deficient" as measured by "an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. In

assessing the first factor, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. As the Supreme Court has elaborated:

> A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* (internal quotation marks omitted).

"Second, the defendant must show that the deficient performance prejudiced the defense." *Id.* at 687. This means that "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* This "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011) (internal quotation marks omitted).

When combined with AEDPA review, the *Strickland* test becomes even harder to meet. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial." *Richter*, 131 S. Ct. at 788 (internal quotation marks and citations omitted). Under § 2254(d), "[t]he question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id*. at 788.

### C. Counsel's Performance

Because the Ohio Supreme Court denied Jackson's petition without comment, the Ohio Court of Appeals' opinion on Jackson's petition for post-conviction relief "is the last state court to adjudicate the claim on the merits" and is therefore "[t]he relevant state court decision." *Pudelski v. Wilson*, 576 F.3d 595, 607 (6th Cir. 2009). The Ohio Court of Appeals based its conclusion that Jackson's trial counsel had adequately investigated Jackson's case on the following factors: (1) that Jackson's trial counsel did interview Jackson, Jackson's wife, and Jackson's psychiatrist; (2) that Jackson's trial counsel's decision to review only the state's discovery materials "and not investigate outside of the evidence contained in these filings [] was reasonable in light of all the evidence provided by the State during discovery"; and (3) that because Jackson's trial counsel's decision to formulate "a theory of defense predicated upon Jackson's desire to commit suicide and his alleged mental defect" was reasonable in light of the investigation he did perform, he had "no duty to prepare for alternative theories" such as accidental death. R. 9-2 (Op., Nov. 9, 2009 at 11–12) (Page ID #529–30) (internal quotation marks omitted).

Jackson argues that the Ohio Court of Appeals unreasonably applied *Strickland* to conclude that his trial counsel did not perform deficiently. Appellant Br. at 14. He argues that his trial counsel's failure to conduct any investigation beyond reviewing the list and testimony of witnesses to the shooting disclosed by the prosecution, and interviewing Jackson, Jackson's wife, and Jackson's psychiatrist, was objectively unreasonable. *Id.* at 14–15. Rather, he argues that the "known evidence" from the prosecution's discovery and the circumstances of the shooting

would have led a reasonable attorney independently "to see if further eyewitnesses could be discovered among the class of Heartland . . . residents or employees who were on the premises that day." *Id.* at 17. Specifically, he cites two factors—that the prosecution's discovery discussed "two eyewitnesses to events both right before and right after the shooting" but none to the exact moment of the shooting, and the fact that the shooting took place in broad daylight in the parking lot of the Heartland Nursing Home. *Id.* If his trial counsel had investigated further, Jackson argues, he likely would have discovered Chaffin because she was working there on the day of the shooting. *Id.* at 15–16. Alternatively, Jackson argues that even if Jackson's trial counsel cannot be said to have failed to investigate entirely, the Sixth Circuit "has also recognized that a known class of possible eyewitnesses"—here nursing home residents and employees at Heartland—"should lead an attorney to investigate further," and cites *Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2004). Appellant Br. at 18.

### 1. Failure-to-investigate case law

The Supreme Court in *Strickland* set forth the following guidance in evaluating failure-to-investigate claims. "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, *but also whether the known evidence would lead a reasonable attorney to investigate further*." *Wiggins*, 539 U.S. at

9

527 (emphasis added). The Supreme Court in *Strickland* made clear that the known record evidence includes the defendant's communications to his counsel: "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Strickland*, 466 U.S. at 691. The thoroughness of a counsel's investigation in turn influences the reasonableness of strategic choices made on the basis of that investigation. "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690. However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91.

The Supreme Court has cautioned that attorneys do not need to investigate exhaustively every aspect or potential angle of the defendant's case. "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste." *Rompilla v. Beard*, 545 U.S. 374, 383 (2005); *see also Richter*, 131 S. Ct. at 791 ("The Court of Appeals erred in suggesting counsel had to be prepared for any contingency. *Strickland* does not guarantee perfect representation, only a reasonably competent attorney.") (internal quotation marks and citations omitted).

Supreme Court decisions finding ineffective assistance of counsel under *Strickland* in the failure-to-investigate context fall into two categories. In one line of cases, trial counsel failed to conduct any investigation or perform basic investigative steps such as reviewing known evidence

or interviewing known witnesses. *See, e.g.*, *Porter v. McCollum*, 558 U.S. 30, 39–40 (2009) ("Here, counsel did not even take the first step of interviewing witnesses or requesting records."); *Rompilla,* 545 U.S. at 383 (holding that "the lawyers were deficient in failing to examine the court file on Rompilla's prior conviction," knowing that the state "intended to seek the death penalty by proving Rompilla had a significant history of felony convictions indicating the use or threat of violence," including by proving this prior conviction); *Williams*, 529 U.S. at 395–96 (holding that defense counsel failed to reasonably investigate mitigating evidence because he "failed to seek prison records recording Williams' commendations" in prison, positive character "testimony of prison officials," and "failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently" and would speak positively about him); *Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (holding that trial counsel rendered deficient performance because "[r]espondent's lawyer neither investigated, nor made a reasonable decision not to investigate, the State's case through discovery").

In another line of cases, evidence in the record suggested fruitful leads that a reasonable attorney would have pursued. In *Wiggins*, for example, the Supreme Court held that the defendant's trial counsel had rendered deficient performance because it was objectively unreasonable for them not to investigate "leads" in the presentence investigation report and Department of Social Services records on the defendant's background that suggested abuse and other facts useful as mitigating evidence in sentencing. 539 U.S. at 525. *See also Porter*, 558 U.S. at 40 ("[L]ike the counsel in *Wiggins,* [counsel] ignored pertinent avenues for investigation

11

of which he should have been aware. The court-ordered competency evaluations, for example, collectively reported Porter's very few years of regular school, his military service and wounds sustained in combat, and his father's 'over-disciplin[e].'").

*Bigelow v. Williams*, 367 F.3d 562 (6th Cir. 2007), the main Sixth Circuit case cited by Jackson, is more fairly characterized as falling within the category of "leads" that should be investigated further, rather than establishing a stand-alone rule that counsel must investigate all potential witnesses in a known class, as Jackson claims. Bigelow had always maintained to his counsel that he had been working in Columbus, Ohio, on the date of the crime, not Toledo, Ohio, where the crime took place. *Id.* at 564–65. Four days before trial, there was an "evidentiary breakthrough"—the appearance of one witness who said he could confirm Bigelow's alibi. *Id.* at 572, 574. In light of this development—"the *only evidence* then available for Bigelow's defense"—we held that "[a]t a minimum, it would seem that this evidentiary breakthrough would have prompted additional inquiry either by [counsel] or by a publicly-funded investigator" to attempt to locate other witnesses who could corroborate that Bigelow was in Columbus. *Id.* at 572–73. The other witnesses the court mentioned that Bigelow's counsel could have investigated were all landscapers who had worked at the house where Bigelow claimed he was working on the day of the crime. Thus, they did belong in one sense to a class of witnesses. But we did not characterize the holding as establishing an obligation to interview all members of a

class of potential witnesses, nor did we actually explicitly hold that Bigelow's counsel needed to interview *all* of the other landscapers at the house that day.[1]

### 2. Assessment of Jackson's trial counsel's investigation

Applying AEDPA deference, we hold that the Ohio Court of Appeals did not unreasonably apply existing Supreme Court precedent to find that Jackson's trial counsel's investigative decisions were not objectively unreasonable. This case does not fall into the first category of cases. Jackson's trial counsel did not fail to conduct any investigation or fail to review known evidence. He interviewed Jackson, Jackson's wife, and Jackson's psychiatrist. R. 9-2 (Holtschulte Aff. ¶ 6) (Page ID #353). Jackson's trial counsel also "review[ed] . . . the investigation information provided in discovery" by the prosecution. *Id.* Nor were there any known eyewitnesses to the shooting that Jackson's trial counsel failed to interview. As the district court noted, "[t]his is not a case in which defense counsel deliberately failed to interview or investigate known witnesses." R. 25 (Op. and Order at 3) (Page ID #1323).

Nor does this case clearly fall into the category of cases where a "lead" in the evidence known to trial counsel should have prompted further investigation. On the one hand, the fact that the shooting took place in broad daylight behind a nursing facility presumably full of people would seem to suggest the possibility that someone might have witnessed the actual moment of

---

[1]Jackson also cites *Poole v. MacLaren*, 547 F. App'x 749, 751 (6th Cir. 2013), *cert. denied*, 135 S. Ct. 122 (2014), for the proposition that a petitioner could successfully establish ineffective assistance for failure to find an initially unknown witness if facts established by the petitioner indicated that the witness "could have been found by counsel prior to Petitioner's trial." Appellant Br. at 20 (quoting *Poole*, 547 F. App'x at 755). It is true that *Poole* did preserve the possibility that counsel could be ineffective for failing to find and interview an unknown witness, but the decision does not specify what those additional facts might be.

the shooting. A better attorney would have conducted an independent investigation of the residents and employees at the facility to verify that the prosecution had fully disclosed all witnesses or had conducted a sufficiently thorough investigation. Jackson's trial counsel might have found Chaffin if he had done so because she was working there that day. Moreover, while Jackson's trial counsel stated in his affidavit that he reviewed the witnesses and their statements disclosed by the prosecution, the affidavit does not state that he actually personally interviewed any of the witnesses to check the accuracy of the statements disclosed or to see if any witness could suggest other individuals to interview. Under de novo review, we might therefore hold that Jackson's trial counsel's decision to limit his investigation was unreasonable.

On the other hand, it is hard to identify a "lead" in the record that should have prompted Jackson's trial counsel to conduct further independent investigation of possible eyewitnesses. The discovery provided by the prosecution was extensive. As described by the Ohio Court of Appeals, it included "a list of thirty-five (35) witnesses that could be called at trial; copies of police reports and narratives; [and] copies of the witness statements," and the "State filed supplemental discovery several times." R. 9-2 (Op., Nov. 9, 2009 at 11) (Page ID #529). Detective Ropp testified at trial that he attempted to locate witnesses to the shooting right after it occurred and interviewed and took witness statements that same day. R. 9-3 (Trial Tr. at 285–288) (Page ID #899–902). Jackson does not argue that anything in the materials disclosed by the prosecution suggested that someone not interviewed by the prosecution had witnessed the exact moment of the shooting. Jackson's trial counsel's affidavit states "[t]hat witnesses identified

and/or disclosed saw activity immediately before and after the shooting but none stated they saw the actual instant of the shooting." R. 9-2 (Holtschulte Aff. ¶ 7) (Page ID #353).

No Supreme Court case squarely stands for the proposition that simply reviewing fairly extensive discovery provided by the prosecution about potential witnesses—when nothing in that evidence suggests further investigation could prove fruitful—is objectively unreasonable in and of itself. And the cases from other circuits cited by Jackson do not stand for this proposition. Appellant Br. at 17–18. Rather, those cases fall within the category of cases in which record evidence contained "leads" that a reasonable attorney would have investigated further. *See, e.g., Code v. Montgomery*, 799 F.2d 1481, 1484 (11th Cir. 1986) (holding that counsel failed to investigate adequately because he "did not contact both of the alibi leads [the defendant] had provided him"); *Nealy v. Cabana*, 764 F.2d 1173, 1177–78 (5th Cir. 1985) (finding ineffective assistance of counsel where counsel failed to investigate known potential alibi witnesses); *Thomas v. Lockhart*, 738 F.2d 304, 308 (8th Cir. 1984) (holding that counsel failed to investigate adequately because counsel only "review[ed] the investigative file of the prosecuting attorney" *in combination with the fact* that the defendant "maintained he was innocent" and "[the defendant] and his mother testified that he gave [counsel] the names of three alibi witnesses"; distinguishing the case "from cases in which the defendant did not provide counsel with any information casting doubt on the events as portrayed by the files of the prosecuting attorney"); *Crisp v. Duckworth*, 743 F.2d 580, 583-84 (7th Cir. 1984) (finding ineffective assistance of counsel in part because counsel did not interview three known witnesses to the shooting and he "failed to interview or call any of the persons [the defendant] said could corroborate his story"). In any

event, these cases were all decided before AEDPA became applicable and do not constitute "clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).

No other record evidence can be characterized as a "lead" that should have prompted Jackson's trial counsel independently to search for other eyewitnesses to the actual moment of the shooting. Unlike the defendant in *Bigelow*, for example, Jackson does not claim that he told his trial counsel that the shooting was accidental, which clearly would have made it more necessary to search for other possible eyewitnesses. Jackson maintained that he could not remember what happened at the time of the shooting. R. 9-4 (Trial Tr. at 95) (Page ID #1026). Jackson's mother did not tell the bystanders who came to her aid immediately after the shooting or the police that the shooting was accidental; all she said was that her son had shot her. *Id.* at 54 (Page ID #985).

In sum, under existing Supreme Court precedent, it is difficult to conclude that Jackson's trial counsel's decision not to seek independently other eyewitnesses to the shooting was so objectively unreasonable such that "fairminded jurists" would not disagree, particularly given the doubly deferential review of *Strickland* claims. *Richter*, 131 S. Ct. at 786. Based on the investigation Jackson's trial counsel undertook, his decision to pursue the defense of not guilty by reason of insanity was also not objectively unreasonable. R. 9-2 (Holtschulte Aff. ¶ 6) (Page ID #353). We therefore do not reach the second prong of the *Strickland* analysis.

### III. CONCLUSION

For the reasons set forth above, we **AFFIRM** the judgment of the district court.

16

CLAY, Circuit Judge, dissenting. The uncontested record before us clearly demonstrates that Eric Jackson's trial counsel neglected to conduct even the most basic investigation of the circumstances of the shooting for which his client was facing charges of aggravated murder, even though significant questions remained about the shooting and there were conspicuously self-evident avenues of investigation that trial counsel could have pursued. Trial counsel's failure to investigate deprived Jackson of an eye-witness who would have testified that the shooting was a tragic accident. Because I believe that this dereliction of the clearly established duty to investigate can only be condoned by an unreasonable application of Supreme Court precedent, I conclude the district court's order denying habeas should be reversed.

Under the AEDPA standards that govern this case, we may only grant habeas where the state court's reasoning in denying post-conviction relief is "contrary to" or constitutes an "unreasonable application" of clearly established Supreme Court law. 28 U.S.C. § 2254(d). As indicated in the majority opinion, the Supreme Court has explained that under the unreasonable application prong, "a habeas court must determine what arguments or theories supported . . . the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the Supreme] Court." *Harrington v. Richter*, 131 S.Ct. 770, 786 (2011). When these standards are applied to ineffective assistance of counsel claims, the ultimate question "is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Id.* at 788. The unreasonableness inquiry applies to both prongs of the *Strickland* standard: deficient performance and prejudice. *Cullen v. Pinholster*, 131 S.Ct. 1388, 1403-04, 1408 (2011).

17

### 1. The Deficiency of Counsel's Performance

*Strickland* and numerous subsequent Supreme Court cases hold that defense counsel is under a duty to investigate their client's case. *Strickland*, 466 U.S. 668, 690-91 (1984); *Porter v. McCollum*, 558 U.S. 30, 39 (2009); *Rompilla v. Beard*, 545 U.S. 374, 380-90 (2005); *Wiggins v. Smith*, 539 U.S. 510, 522-25 (2003); *Williams v. Taylor*, 529 U.S. 362, 396 (2000); *Burger v. Kemp*, 483 U.S. 776, 794 (1987); *Kimmelman v. Morrison*, 477 U.S. 365, 384 (1986). *Strickland* explained how a court should analyze counsel's performance of that duty in light of the deference a court must pay to defense counsel's professional judgment:

> [S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. *In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.*

*Id.*, 466 U.S. at 690-91 (emphasis added).

Throughout the three decades following *Strickland*, the Supreme Court has steadfastly applied the rule that a decision not to investigate "must be directly assessed for reasonableness in all the circumstances," giving more definite shape to that general rule. *Id.* at 691. In *Wiggins*, for example, the Court could find no reasonable justification for defense counsel's choice to limit their mitigation investigation to the pre-sentence investigation report and records from the Baltimore City Department of Social Services regarding the defendant's time in foster care. 539 U.S. at 524. The Court observed that counsel in that case "uncovered no evidence in their

investigation to suggest that a mitigation case, in its own right, would have been counterproductive, or that further investigation would have been fruitless." *Id.* at 525. The lack of a sound reason to limit the investigation, the Court held, distinguished the case from earlier precedents finding "limited investigations into mitigating evidence to be reasonable."[21] *Id.* The Court rejected the position taken by the Maryland Court of Appeals "that because counsel had *some* information with respect to petitioner's background . . . they were in a position to make a tactical choice not to present a mitigation defense." *Id.* at 527 (emphasis in original). The Court held that "a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Id.* Because the preceding investigation had been inadequate "the [state] court's subsequent deference to counsel's strategic decision not 'to present every conceivable mitigation defense' . . . . was also objectively unreasonable." *Id.* at 528.

The Supreme Court has held that decisions to limit investigations may be found reasonable where initial investigation suggests that pursuing a particular avenue of investigation will be fruitless, *see Strickland*, 466 U.S. at 699; *Rompilla*, 545 U.S. at 383 (room for debate

---

[1] The Court summarized the distinguishable precedent in the following string cite: "*See, e.g., Strickland, supra,* at 699, 104 S.Ct. 2052 (concluding that counsel could "reasonably surmise . . . that character and psychological evidence would be of little help"); *Burger v. Kemp,* 483 U.S. 776, 794, 107 S.Ct. 3114, 97 L.Ed.2d 638 (1987) (concluding counsel's limited investigation was reasonable because he interviewed all witnesses brought to his attention, discovering little that was helpful and much that was harmful); *Darden v. Wainwright,* 477 U.S. 168, 186, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (concluding that counsel engaged in extensive preparation and that the decision to present a mitigation case would have resulted in the jury hearing evidence that petitioner had been convicted of violent crimes and spent much of his life in jail)." *Id.*

about obligation to investigate the defendant's childhood when interviews of both family and the defendant failed to reveal some of the particular traumas the defendant suffered), or that presenting a certain type of evidence would be counterproductive, *Burger*, 483 U.S. at 794; *Darden*, 477 U.S. at 186.

Conversely, under Supreme Court precedent, a decision to limit investigation unsupported by any strategic consideration is unreasonable. *Wiggins*, 539 U.S. at 526 ("The record of the actual sentencing proceedings underscores the unreasonableness of counsel's conduct by suggesting that their failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment."); *Rompilla*, 545 U.S. at 385 ("With every effort to view the facts as a defense lawyer would have done at the time, it is difficult to see how counsel could have failed to realize that without examining the readily available file they were seriously compromising their opportunity to respond to a case for aggravation."); *Kimmelman*, 477 U.S. at 384 ("Counsel's failure to request discovery . . . was not based on 'strategy'").

The Supreme Court has also applied the rule that any strategic choice "made after less than complete investigation [is] reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation," *Strickland*, 466 U.S. at 691, at least twice rejecting an alleged "tactical" choice to focus on an alternative theory where it found that the theory was prematurely adopted. *Williams*, 529 U.S. at 396 (decision to focus on voluntary confession was not adequate strategy because counsel had "not fulfill[ed] their obligation to conduct a thorough investigation of the defendant's background" for the mitigation case); *Rompilla*, 545 U.S. at 388-89 (rejecting the position of the state postconviction courts that

"defense counsel's efforts to find mitigating evidence by other means excused them from looking at the prior conviction file.").

One final element of Supreme Court jurisprudence on ineffective assistance of counsel claims bears particular emphasis, as it has been entirely ignored in this case both by the Ohio courts and by the majority opinion. Namely, in *Strickland* the Supreme Court instructed that counsel's role in the "adversarial process" must serve as the benchmark for assessing the adequacy of counsel's performance. 466 U.S. at 686 ("[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."); *see also id.* at 690 ("[C]ounsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case.") In *Kimmelman*, the Court reiterated this instruction, writing that the adversarial process "generally will not function properly unless defense counsel has done some investigation into the prosecution's case and into various defense strategies." 477 U.S. at 384. In that case, defense counsel conducted no pre-trial discovery, and as a result failed to file a timely suppression motion because he was unaware of the evidence found in an unconstitutional search and seizure. Applying the principle set out above, the Supreme Court held that defense counsel's performance was unconstitutionally deficient because the attorney's "complete lack of pretrial preparation put[] at risk both the defendant's right to an ample opportunity to meet the case of the prosecution and the reliability of the adversarial testing process." *Id.* at 385 (citations omitted).

Analyzed in light of the clear guidance from Supreme Court precedent, the decision of the Ohio Court of Appeals in the instant case is, in my judgment, glaringly unreasonable. The state appellate court concluded that Petitioner's trial attorney did not provide constitutionally deficient counsel because his decision to "not investigate outside of the evidence contained in [the State's discovery] filings" was reasonable "in light of all the evidence provided by the State during discovery." *State v. Jackson*, 2009 WL 3720578 at *5, 2009-Ohio-5906 at ¶ 14 (Ohio Ct. App. 2009) ("*Jackson I*"). The court explained that "[b]ased upon that evidence, trial counsel developed a theory of defense predicated upon Jackson's desire to commit suicide and his alleged mental defect," then cited the principle that "[a]fter counsel chooses an adequate theory of defense, there is no duty to prepare for alternative theories" to explain that the performance of Petitioner's counsel was not constitutionally deficient. *Id.*

The contention that defense counsel could reasonably decide not to investigate *at all* the circumstances of the crime because of the volume of discovery is difficult if not impossible to square with *Strickland*'s holding that the benchmark for any claim of ineffectiveness is whether defense counsel fulfilled its function "to make the adversarial testing process work in the particular case." 466 U.S. at 690. Indeed, the state appellate court's reasoning in effect eliminates the duty to investigate altogether upon the state's production of minimally voluminous discovery. It is difficult to believe that any fairminded jurist could regard such reasoning as consistent with *Strickland* and its progeny. Indeed, if directly adopted, such a rule would be altogether contrary to the Supreme Court precedent relying on the proposition that "[the adversarial] testing process generally will not function properly unless defense counsel has done

22

some investigation into the prosecution's case and into various defense strategies." *Kimmelman*, 477 U.S. at 384.

Certainly, such an interpretation of *Strickland* cannot be reasonably argued on the facts of this case, where the state's disclosures did not yield answers to the central questions relevant to Petitioner's criminal liability, such as how the shooting occurred, and what was the nature of Petitioner's intent. As the Supreme Court has directly held, the "quantum of evidence," such as the number of reports and statements in the discovery file, is not dispositive. Instead, courts must also ask "whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527. In this case, I cannot perceive any reasonable argument that the evidence known to defense counsel—that Petitioner could only remember intending to kill himself, that no witness identified by the prosecution saw the shooting occur, and that the shooting occurred in broad daylight in the parking lot of an operating nursing home—could have led a reasonable attorney to conclude that further investigation would be fruitless. *See Wiggins*, 539 U.S. at 527; *Rompilla*, 545 U.S. at 383.

Nor did the Ohio Court of Appeals identify *any* strategic consideration that could have led trial counsel to limit his investigation as a tactical matter. *Compare Jackson I*, at *5 with *Wiggins*, 539 U.S. at 526 (counsel's conduct was unreasonable because the "failure to investigate thoroughly resulted from inattention, not reasoned strategic judgment"); *Kimmelman*, 477 U.S. at 384 ("Counsel's failure to request discovery . . . was not based on 'strategy'"). While the Supreme Court has held that "*reasonably diligent counsel* may draw a line when they have good reason to think further investigation would be a waste," *Rompilla*, 545 U.S. at 383 (emphasis

23

added), here it appears that defense counsel conducted absolutely no due diligence to assess the thoroughness of the prosecution's investigation, and his affidavit states quite explicitly that he took no action to search for any additional witnesses.

Although I would not reduce the Supreme Court's cases finding violations of the duty to investigate, as the majority opinion does, to cases where defense counsel essentially conducted no investigation at all and cases where defense counsel neglected apparent leads, this case fits squarely under both lines of authority. Defense counsel conducted *no* meaningful investigation into the circumstances of the crime, and his failure to investigate was all the more flagrant in light of the readily apparent possibility that additional witnesses might be found at the nursing home.

Defense counsel's *only* investigation into the circumstances of the crime itself was comprised of interviewing his client, who "had no recollection of the actual shooting." (R. 9-2, Holtschulte Affidavit, Page ID# 353.) Indeed, Petitioner testified at trial that he intended to kill himself that day, that he went to see his mother to say goodbye, and that he never intended to shoot his mother. Counsel apparently made no effort to interview the witnesses who were identified in the prosecution's disclosures, an omission that is significant under Supreme Court precedent. *Burger v. Kemp,* 483 U.S. 776, 794-95 (1987) (holding that limited mitigation investigation was reasonable when counsel interviewed all witnesses brought to his attention, and reasonably determined that focusing on his client's personal history would be detrimental); *see also Porter v. McCullom*, 558 U.S. 30, 39-40 (2009) (counsel was deficient for failing to "even take the first step of interviewing witnesses or requesting records.").

24

As to leads, in this case a potential source of witnesses was obvious: the shooting occurred in full daylight in the parking lot of an operating nursing home. Even with every effort to avoid the effects of hindsight and to account for the generality of the *Strickland* standard, I cannot understand how defense counsel could have failed to perceive that additional investigation may well have revealed further witnesses among the employees, residents, or visitors to the nursing home. It seems to me that fairminded jurists must agree that, particularly in light of the unresolved questions about the shooting, "any reasonably competent attorney would have realized that pursuing these leads was necessary to making an informed choice among possible defenses." *Wiggins*, 539 U.S. at 525.

In sum, Petitioner's trial counsel failed to conduct any meaningful investigation of the crime with which Petitioner was charged, although the known evidence revealed significant and unresolved questions about Petitioner's actions and intent. The argument that defense counsel's review of the discovery files satisfied his duty to investigate the shooting is flatly inconsistent with the core holdings of *Strickland* and its progeny: that counsel's function is to enable the adversarial process to function effectively, *Kimmelman*, 477 U.S. at 384-85; *Strickland*, 466 U.S. at 686, 690; that a decision to limit investigation must be supported by reasonable professional judgment, *Kimmelman*, 477 U.S. at 384; *Rompilla*, 545 U.S. at 385; *Wiggins*, 539 U.S. at 526; and that the quantum of evidence is not dispositive where known evidence would lead a reasonable attorney to investigate further, *Wiggins*, 539 U.S. at 527.

### 2. Prejudice Suffered by Petitioner

Neither the Warden nor the Ohio Court of Appeals challenge the proposition that Petitioner's counsel would have very likely found Chaffin had he chosen to investigate further. Indeed, it would be impossible to seriously contest the likelihood that she would have been identified. The most basic steps to test the prosecution's investigation or search for additional witnesses would have started with an inquiry of who was working at the nursing home that day. Such an inquiry would have revealed Kaci Chaffin's name, and by simple cross reference trial counsel could have determined that she was not among the witnesses identified or interviewed by law enforcement. Additionally, had trial counsel or a defense investigator interviewed any of the nursing home employees who were named in the state's disclosures, trial counsel would likely have learned from them that Chaffin was working at the nursing home that day.

I do not believe that fairminded jurists could disagree that had Chaffin testified at trial there is a "reasonable probability that . . . the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984). The Ohio Court of Appeals held that Petitioner was not prejudiced by defense counsel's failure to discover Chaffin for two reasons: first, because it believed Chaffin's story raised serious credibility questions, and second, because it believed "the evidence at trial overwhelmingly supported the conclusion that Jackson purposefully killed his mother." *Jackson I*, at *7.

*Strickland* held that to show prejudice warranting reversal of a conviction, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694. Where, as here,

the defendant challenges a conviction, "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695. A court must consider the totality of the evidence in making this determination. *Id.* "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.* at 696.

Unquestionably, Chaffin's testimony would have constituted significant exculpatory evidence. At trial, she would have been the only witness who saw the actual shooting. Her testimony that she saw Petitioner pointing the gun at his own head and his mother struggling to take it from him when the gun discharged would have provided compelling and direct evidence that the shooting was an accident, going directly to the heart of the case. Moreover, her testimony would have corroborated the evidence put forward by defense regarding Petitioner's suicidal intent.

The Ohio Court of Appeals' conclusion that Petitioner was not prejudiced by his attorney's failure to present Chaffin's testimony at trial was unreasonable. First, the court unreasonably discounted her testimony, citing credibility concerns that are simply insufficient to justify a conclusion that her testimony could not have, under a reasonable probability standard, raised a "reasonable doubt respecting guilt" if presented at trial.[2] *See Strickland*, 466 U.S. at 695. The court believed that because Petitioner's wife was Chaffin's "co-worker and childhood

---

[2] In evaluating a *Strickland* claim based on the failure to present certain witness testimony, a state court's determination that there is no prejudice because the witness is not credible is a mixed question of fact and law, and therefore is not entitled to the § 2254(e)(1) presumption. *Ramonez v. Berghuis*, 490 F.3d 482, 490-91 (6th Cir. 2007).

babysitter," their relationship "raised credibility issues." *Jackson I*, at *6. Chaffin's affidavit stated that she was "casually acquainted with Petitioner's wife "because she sometimes babysat [Chaffin] as a child" and explains that before their chance encounter, she had not seen Petitioner's wife "in at least eight years."[3] (R. 9-1, Chaffin Affidavit, PageID# 186.) This is hardly the sort of intimate relationship that could support credibility concerns sufficient grave to entirely discount Chaffin's testimony. Moreover, Chaffin was also a co-worker of Petitioner's mother, muddying the water regarding the loyalties that a jury might justly impute to her in this case. (R. 9-1 at 185.)

The Ohio Court of Appeals also believed that Chaffin's stated reason for not coming forward sooner—which was that she "was not aware that anything [she] saw was significant to the police investigation"—raised "serious credibility issues."[4] *Jackson I*, at *6. Again, these concerns are simply not grave enough to conclude that there is no reasonable probability that a jury could have believed her testimony that the shooting was accidental. Chaffin's affidavit explains that after she witnessed the shooting, she "went to the bathroom to get sick" then called her grandfather, who picked her up from work, meaning that she would not have been present for the police investigation that afternoon. (R. 9-1 at 185.) She was eight-months pregnant at the time of the shooting. (*Id.*) She states that she was "never approached by the police or anyone else regarding the event." (*Id.* at 186.) Moreover, in light of the time and place of the shooting,

---

[3] Inexplicably, the state court opinion omits the reference to the eight-year period from its quotation of the affidavit without any indication of editing. *See Jackson I*, at *4.

[4] Chaffin's testimony was discovered for the first time approximately a year after the shooting and about four months after Petitioner was convicted at trial. (R. 9-1 at 185-86.)

she could well have believed that others also witnessed the same events. Although a jury would be entitled to discount her story based on her failure to come forward earlier in the investigation, fairminded jurists could not reasonably dispute that the jury could also have found her story believable enough to raise serious doubt as to Petitioner's intent. It was unreasonable for the Ohio Court of Appeals to "discount entirely the effect that [her] testimony might have had on the jury." *Porter*, 558 U.S. at 43 (applying clearly established Supreme Court law).

Finally, contrary to the assertions of the Ohio Court of Appeals, no fairminded jurist could characterize the evidence against Petitioner as "overwhelming"—certainly not, in any event, as to the crucial element of intent that is thrown into question by Chaffin's testimony. Two of the pieces of evidence of intent cited by the Ohio Court of Appeals rely on negative inference. First, the court pointed to the fact that Petitioner told the arresting deputy that he shot his mother, but did not tell the arresting deputy that the shooting was accidental. *Jackson I*, at *6. Petitioner, however, denied the statement altogether. Second, the court pointed to the fact that Petitioner's mother told medical personnel that her son shot her, but did not mention it was accidental. *Id.* at *7. Her statements, however, were made in response to questioning by medical and law enforcement personnel, and the witness testifying to those statements described her as being in a state of shock and severe pain. The final piece of evidence that the state appellate court identified was the testimony of another employee from the nursing home that she witnessed Petitioner and his mother arguing, and that she saw Petitioner "grabbing at" his mother, and his mother "trying to pull away." *Id.* Although the fact that the two were arguing is consistent with an intentional shooting, I do not believe that any fairminded jurist could

characterize it as "overwhelming" evidence that Petitioner purposefully shot his mother. Indeed, the evidence that they argued is also consistent with the possibility that Petitioner, who was already suicidal and in the midst of an emotional confrontation, attempted to shoot himself in front of his mother.

In short, Chaffin's affidavit provides compelling evidence that the shooting underlying Petitioner's conviction for aggravated murder was an accident. Fairminded jurists could not disagree that had this evidence been submitted at trial, there is at least a reasonable probability that the trial would have resulted in a different outcome.

## CONCLUSION

For the reasons stated above, I would reverse the judgment of the district court and remand with orders to conditionally grant Petitioner the habeas relief he seeks.