**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**

File Name: 13a1016n.06

**No. 12-1705**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED

Dec 05, 2013

DEBORAH S. HUNT, Clerk

JOHN ANTONIO POOLE, )
 )
  Petitioner-Appellant, )   ON APPEAL FROM THE
 )   UNITED STATES DISTRICT
vs. )   COURT FOR THE EASTERN
 )   DISTRICT OF MICHIGAN
DUNCAN MACLAREN, )
 )
  Respondent-Appellee. )
_____ )

Before:  KEITH and SUTTON, Circuit Judges; and BLACK, District Judge[*].

**TIMOTHY S. BLACK, District Judge.**   Petitioner-Appellant John Antonio Poole

("Petitioner") appeals an order of the district court denying his *pro se* petition for writ of habeas

corpus filed pursuant to 28 U.S.C. § 2254.

**I.**

A Michigan jury convicted Petitioner of first-degree murder, being a felon in possession of

a firearm and possession of a firearm during the commission of a felony.  Petitioner's convictions

arose from the shooting death of Henry Covington, who was murdered at approximately 6:45 a.m.

on December 12, 2001, at a home Covington shared with his fiancée, Delora Lester.  Months before

the murder, Lester purchased the home from Petitioner's uncle, Harold Varner.  Soon after the sale,

_____
[*] The Honorable Timothy S. Black, District Judge, United States District Court, Southern District of Ohio, sitting by designation.

a dispute arose between Lester and Varner over the home. Evidence presented at trial suggested that Covington's relationship with Lester apparently complicated the dispute from Varner's perspective.

The prosecution's case against Petitioner relied significantly on the preliminary examination testimony of Amanda Coddington, a woman who shared a child with Varner and who managed Varner's properties. Coddington testified during the preliminary examination that Varner called her at approximately 5:00 a.m. on December 12, 2001, requesting that she meet him at a gas station. After meeting at the gas station, Coddington and Varner drove separately to pick up Petitioner, and Coddington then drove Petitioner to the vicinity of Lester's home while Varner followed in a separate vehicle. Upon arriving near Lester's home, Petitioner exited the vehicle. Fifteen minutes later, Coddington heard four gunshots, after which, Petitioner returned to the vehicle with a gun in his hand. While Coddington drove Petitioner away from the scene, Petitioner stated that he "shot that nigga and killed him." A day or two later, Varner told Coddington that he paid Petitioner $300 to kill someone, and that having Covington murdered made it easier for him to deal with Lester.

At trial, Coddington recanted all of the foregoing testimony provided during the preliminary examination. Instead, Coddington testified that she did not go anywhere with Petitioner on the morning of December 12, 2001, and that she did not even see him that day. Coddington testified at trial that she lied during the preliminary examination because Lieutenant Miguel Bruce threatened and harassed her into giving the false testimony. Coddington testified at trial that officers told her exactly what to say during her preliminary examination.

The prosecution's case against Petitioner also relied on the trial testimony of Vaudi Higginbotham, a jailhouse informant. Higginbotham testified that he was an inmate at the Wayne County Jail along with Varner and that, during a bible study session at the jail, Varner stated that

"he paid his nephew three hundred dollars to kill [a] guy" because Varner could not get over losing $30,000 to $40,000 in a real estate transaction. Higginbotham also testified that Varner stated he was unable to "sleep at night until he killed this guy or either had this guy killed" and that Varner confessed to giving his nephew "a .357 to do'em with."

Evidence against Petitioner also included the testimony of Sergeant Kenneth Gardner, an investigating officer. Sergeant Gardner testified at trial that Varner insisted on speaking with him after being arrested in connection with Covington's murder. According to Gardner, Varner offered to provide information about a separate murder in exchange for leniency in the case involving Covington's murder. According to Gardner, Varner provided information about the separate murder case and also stated that Petitioner confessed to shooting Covington during a telephone call a few days after Covington was shot. Specifically, when asked whether Varner said "anything about Tony," Gardner testified that Varner "told [him] that Tony had told him how he had shot Mr. Covington."[1]

The jury found Petitioner guilty of first-degree premeditated murder, being a felon-in-possession of a firearm and possessing a firearm during the commission of a felony. Petitioner directly appealed his conviction to the Michigan Court of Appeals arguing that the trial court denied his Sixth Amendment right to confront witnesses when it allowed Gardner to testify about Varner's statements during the interview, and that trial counsel's failure to object to Gardner's testimony deprived him of the effective assistance of counsel. The Michigan Court of Appeals affirmed the convictions and the Michigan Supreme Court denied Petitioner's application for leave to appeal.

---

[1] Gardner also testified that Varner stated that Petitioner told him "that Mr. Covington was going for a gun" at the time Petitioner shot Covington.

Petitioner subsequently moved for relief from judgment in the state trial court asserting a number of ineffective assistance of counsel claims, including trial counsel's purported failure to locate and investigate certain witnesses. The witnesses trial counsel purportedly failed to investigate included an alleged eyewitness to Covington's murder and inmates at the Wayne County Jail who were detained and housed alongside Varner and Higginbotham. The trial court denied Petitioner's motion for relief from judgment and the Michigan Court of Appeals denied Petitioner's delayed application for leave to appeal. The Michigan Supreme Court also denied Petitioner leave to appeal.

Petitioner then filed his petition for a writ of habeas corpus in the district court, which the district court denied. The district court, however, granted a certificate of appealability on the issue of whether any error in admitting Gardner's testimony in violation of the Confrontation Clause was harmless and whether trial counsel was ineffective for failing to object to the admission of such testimony. The district court also issued a certificate of appealability on the issue of whether trial counsel was ineffective in not investigating certain witnesses.

**II.**

This Court conducts a *de novo* review of a district court's denial of a habeas petition. *Miller v. Colson*, 694 F.3d 691, 695 (6th Cir. 2012) (citing *Tolliver v. Sheets*, 594 F.3d 900, 915 (6th Cir. 2010)). The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") provides that district courts "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Courts cannot grant a petition challenging claims "adjudicated on the merits in State court" unless the state court's adjudication "(1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d); *see also Haskell v. Berghuis*, 511 F. App'x 538, 543 (6th Cir. 2013)

A legal principle is "clearly established" for purposes of habeas corpus review "only when it is embodied in a holding of [the Supreme] Court." *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S.Ct. 1171, 175 L.Ed.2d 1003 (2010) (citations omitted).  "[T]he relevant decision for purposes of determining 'clearly established Federal law' is the last state court decision that adjudicated the claim on the merits." *Miller*, 694 F.3d at 696 (citation omitted).

The "contrary to" and "unreasonable application" clauses set forth in 28 U.S.C. § 2254(d)(1) have independent meanings.  *Bell v. Cone*, 535 U.S. 685, 694, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002).  The "contrary to clause" applies when a "state court applies a rule that contradicts the governing law set forth" by the Supreme Court of the United States or if the state court "decides a case differently . . . on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 411, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000)).  The "unreasonable application" clause applies where "the state court correctly identifies the governing legal principle" set forth by the Supreme Court, "but unreasonably applies it to the facts of the particular case."  *Bell*, 535 U.S. at 694, 122 S.Ct. 1843 (citing *Williams*, 529 U.S. at 407-08).

In determining whether a state court's decision unreasonably applied clearly established law, federal courts must focus "on whether the state court's application of clearly established federal law is objectively unreasonable[.]"  *Id.*  "[A]n unreasonable application is different from an incorrect one."  *Id.* (citation omitted).

**III.**

In his first assignment of error, Petitioner first contends that admission of Varner's statement through the testimony of Sergeant Gardner violated the Confrontation Clause and that the state court unreasonably concluded that admission of Gardner's testimony amounted to harmless error. The Confrontation Clause of the Sixth Amendment provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This clause bars the "admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." *Crawford v. Washington*, 541 U.S. 36, 53-54, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004).[2]

"Confrontation Clause errors are subject to harmless-error analysis." *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986); *Chapman v. California*, 386 U.S. 18, 21-22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). A district court's harmless error determination is subject to a de novo review. *Jordan v. Warden, Lebanon Corr. Inst.*, 675 F.3d 586, 598 (6th Cir. 2012) (citation omitted).

Error is harmless where "it did not have a substantial and injurious effect or influence in determining the jury's verdict." *Matthews v. Warden, Ross Corr. Inst.*, 502 F. App'x 561, 563 (6th

---

[2] In Respondent's brief on appeal, Respondent argues that Varner's statement admitted through the testimony of Gardner does not amount to a Confrontation Clause violation because it was not offered for the truth of the matter asserted. *See Crawford*, 541 U.S. at 59, n.9, 124 S.Ct. 1354 (stating that "[t]he Clause . . . does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted") (citing *Tennessee v. Street*, 471 U.S. 409, 105 S.Ct. 2078 (1985)). At oral argument, Petitioner represented that the parties now stipulate that a Confrontation Clause violation occurred. For purposes of this appeal, we assume without deciding that admission of Sergeant Gardner's testimony violated the Confrontation Clause.

Cir. 2012). To determine whether a Confrontation Clause violation was harmless, the following factors must be considered:

> (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009).

Here, Gardner's testimony was not a significant focus of the prosecution's case against Petitioner. Instead, Coddington's preliminary examination testimony provided the most significant evidence against Petitioner. In her preliminary examination, Coddington provided detailed testimony about how she drove Petitioner to the area of Covington's home on the morning of Covington's murder, that Petitioner exited the vehicle near Covington's home and, approximately fifteen minutes later, Petitioner ran back to the car after four gunshots were fired. During her preliminary examination, Coddington also provided specific testimony that Petitioner had a .357 in his hand upon reentering the car and subsequently stated that he "shot that nigga and killed him." Coddington also informed the court during her preliminary examination that, a day or two after the shooting, Varner told her that he paid Petitioner $300 to kill someone, and that having Covington murdered made it easier to deal with Lester.

In addition to the testimony of Coddington, the prosecution relied significantly on the testimony of Higginbotham in its case against Petitioner. Higginbotham testified that Varner confessed during bible study in the jailhouse that "he paid his nephew three hundred dollars to kill [a] guy" because he let his pride get to him after losing money in a real estate deal. According to Higginbotham, Varner stated that he could not get over losing $30,000 to $40,000 in the transaction,

so he "surveyed the area for months at various times" and "couldn't sleep at night until he killed this guy or either had this guy killed." Higginbotham also testified that Varner confessed to giving his nephew "a .357 to do'em with."

Gardner's testimony was merely cumulative of and corroborated by the preliminary examination testimony of Coddington and the trial testimony of Higginbotham. That is not to say, however, that Gardner's testimony was of no significance in securing Petitioner's conviction. Nevertheless, the importance of Gardner's testimony pales in comparison to the preliminary examination testimony of Coddington. The prosecution's case against Petitioner would not have been significantly weakened in the absence of Gardner's testimony.

Indeed, Varner's statement may have helped Petitioner more than it hurt him. According to Gardner's testimony, Varner said that Poole shot Covington because he saw Covington reach for a gun. The prosecution's claim, however, was that Poole shot Covington because Varner paid him to do so. Varner's statement may have bolstered the prosecution's case by putting Poole at the scene of the crime. But it undercut the case by suggesting that Poole acted in self-defense and by casting doubt on the prosecution's contract-killing theory of the crime.

Petitioner points to no evidence contradicting Gardner's testimony, though he suggests that Coddington's trial testimony, in which she recanted her earlier preliminary examination testimony, contradicts her preliminary examination testimony. However, at trial, Coddington simply testified that she did not go anywhere with Petitioner on the day of Covington's murder. At no time did Coddington testify that Petitioner did not, or could not have shot Covington.

Accordingly, even assuming admission of Gardner's testimony violated the Confrontation Clause, in the weighing of the aforementioned factors in determining the harmfulness of any such

violation, the court concludes that admission of Gardner's testimony was harmless error because it did not have a substantial and injurious effect or influence in Petitioner's conviction. Petitioner's asserted error in this regard is overruled.

**IV.**

Next, Petitioner argues that counsel's performance prejudicially fell below an objective standard of reasonableness when: (A) counsel failed to object to Gardner's testimony during trial; and (B) counsel failed to investigate potential witnesses for his defense.

A claim of ineffective assistance of counsel first requires that Petitioner show deficient performance by counsel by demonstrating "that 'counsel's representation fell below an objective standard of reasonableness.'" *Davis v. Lafler*, 658 F.3d 525, 536 (6th Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). Next, Petitioner must demonstrate prejudice arising from counsel's deficient performance "by establishing that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052).

**A.**

Petitioner contends that counsel's performance fell below an objective standard of reasonableness when counsel failed to object to admission of Varner's statements that Petitioner said he shot Covington. The state court of appeals denied Petitioner's arguments in this regard, finding that counsel could not object at trial based on *Crawford* because *Crawford* was not decided at that time. In addition, the state court of appeals concluded that allowing Gardner's testimony in violation of the Confrontation Clause was harmless beyond a reasonable doubt.

Assuming Petitioner can successfully show that counsel's performance fell below an objective standard of reasonableness, he cannot show a reasonable probability of a different result in the absence of the purported deficiency. Again, as set forth in addressing Petitioner' first assigned error, Gardner's testimony was cumulative of and corroborated by the preliminary examination testimony of Coddington and the trial testimony of Higginbotham. In light of that other evidence, the prosecution's case against Petitioner would not have been significantly weakened in the absence of Gardner's testimony.

Accordingly, finding no reasonable probability of a different result in the absence of counsel's purported deficient representation in failing to object to Gardner's trial testimony, Petitioner's ineffective assistance of counsel claim in this regard is overruled.

**B.**

Last, Varner argues that counsel's failure to investigate potential witnesses amounted to ineffective assistance of counsel. Petitioner asserts that trial counsel made no attempt to investigate any of the inmates present during Varner's purported confession to Higginbotham and failed to investigate Bridgette Woodall, an alleged eyewitness to Covington's murder.

"[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052. "This duty includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005) (citations omitted). When determining counsel's effectiveness in investigating a case, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Strickland*, 466 U.S. at 691, 104 S.Ct. 2052.

However, "[c]ounsel cannot be expected to investigate a defense or a witness unknown to him." *Collins v. Berghuis*, No. 1:08-cv-369, 2011 WL 4346333, *19 (W.D. Mich. Aug. 22, 2011) (citing *Bigelow v. Williams*, 367 F.3d 562, 571 (6th Cir. 2004); *Sones v. Bell*, No. 1:07-cv-552, 2010 WL 2472760, at *12 (W.D. Mich. Apr.26, 2010)). "[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up[.]" *Rompilla v. Beard*, 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005) (citations omitted).

With regard to Bridgette Woodall, Petitioner sets forth no facts showing that Ms. Woodall's purported knowledge concerning the murder of Covington was known to Petitioner's counsel at anytime before trial. In fact, Ms. Woodall's affidavit is dated after the conclusion of trial and she states that she never told police about the shooting. Ms. Woodall also states in her affidavit that, until the time of her affidavit, she never wanted to get involved in the investigation because the gunman saw her immediately after the shooting and, as a result, she feared for her life. Because Ms. Woodall was unknown to Petitioner's trial counsel, and because Petitioner presents no facts upon which the court conclude Ms. Woodall could have been found by counsel prior to Petitioner's trial, Petitioner fails to demonstrate that counsel's performance fell below an objective standard of reasonableness.

With regard to investigating statements from others in the Wayne County Jail in an effort to discredit the testimony of Higginbotham, even assuming that the counsel's failure to investigate these witnesses fell below an objective standard of reasonableness, Petitioner does not establish a reasonable probability that, but for such failure, the trial result would differ. Each affidavit from the Wayne County Jail witnesses is dated years after Petitioner's trial, with the earliest affidavit dated December 29, 2004, *i.e.*, over two years after Petitioner's trial. Only two of these witnesses,

-11-

Antonio Laws and Brian Hamilton, represent that they would have been willing to testify on Varner's behalf at trial, and Hamilton was not among those persons Higginbotham stated was present at the bible study when Varner made his statements. Its also fair to question whether these inmates would have really been willing to offer testimony contradicting the prosecution's evidence while they faced trial by the prosecution in their own cases.

Even if these inmates would have testified at trial, there is no reasonable probability that the trial result would have differed. On cross-examination, Higginbotham's credibility was challenged by showing that he, in fact, offered his testimony against Varner and Petitioner solely in an effort to gain leniency in the murder case against him. And, again, the preliminary examination testimony of Coddington played a substantial role in the prosecution against Petitioner and the truthfulness of that testimony was vigorously challenged at trial.

## V.

For the foregoing reasons, we affirm the district court's denial of Petitioner's petition for a writ of habeas corpus.