OPINION
KAREN NELSON MOORE, Circuit Judge.
Eric A. Jackson appeals the district court’s denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254(d) based on an ineffective-assistance-of-counsel claim. For the reasons set forth in this opinion, we AFFIRM the district court’s judgment.
I. BACKGROUND
The parties do not dispute the following facts. “Jackson shot his mother, Donna Levan ..., with a sawed-off twelve-gauge shotgun” on October 15, 2002. R. 9-2 (Journal Entry, June 22, 2009 at 1) (Page ID # 361). “The shooting occurred in the parking lot of Levan’s place of employment, the Heartland of Marysville Nursing and Rehabilitation Center, in Marysville, ... Ohio.” Id. “At the time of tidal, there were no witnesses to the shooting.” Id. Jackson drove away after the shooting, and soon afterwards a Union County Deputy Sheriff pulled him over and arrested him. Id. “Levan died nine days after the shooting.” Id.
*458 Jackson was indicted for one count of “Aggravated Murder ... with Firearm Specification” and one count of “Unlawful Possession of Dangerous Ordnance” on October 24, 2002. R. 9-1 (Indictment) (Page ID # 54). Jackson entered a written plea of not guilty and not guilty by reason of insanity. R. 9-1 (Written Plea at 1) (Page ID # 57). After the conclusion of the trial, the jury found Jackson guilty on both counts. R. 9-1 (Journal Entry of Sentence, June 27, 2008 at 1) (Page ID # 65). Jackson’s direct appeal did not raise an ineffective-assistance-of-counsel claim. R. 9-1 (Op., Aug. 2, 2004) (Page ID # 162-71).
On February 26, 2004, Jackson petitioned the trial court under Ohio Rule of Criminal Procedure 33(B) for leave to file a motion for a new trial. R. 9-1 (Mot., Feb. 26, 2004 at 1) (Page ID # 173). Under that rule, a motion for a new trial on account of newly discovered evidence must be filed within 120 days after the verdict was rendered, unless the defendant establishes “by clear and convincing proof that [he] was unavoidably prevented from the discovery of the evidence.” R. 9-1 (Ohio’s Mem. in Opp’n to Mot. at 153) (Page ID #206) (quoting Ohio R.Crim. P. 33(B)). Jackson argued that, after the 120-day deadline, an. eyewitness to the shooting, Kaci Chaffin, whom neither the police nor Jackson’s trial counsel had discovered, came forward. Id. In relevant part, her affidavit stated that, on the day of the shooting, Chaffin:
[S]aw Donna fighting with her son. Mr. Jackson had a shotgun pointed to his own head. Donna was trying to pull the shotgun away from him. As Donna struggled with her son, the gun discharged and shot her hand off. At no time did Mr. Jackson appear to point the gun at his mother.
R. 9-2 (Chaffin Aff. ¶¶ 5-6) (Page ID # 355). In a one-sentence entry, the trial court denied Jackson’s motion as untimely. R. 9-1 (Entry, Mar. 2, 2004) (Page ID #209). The Ohio Court of Appeals affirmed the trial court, and the Ohio Supreme Court denied review. R. 9-1 (Op., Sept. 27, 2004 at 8) (Page ID # 299); R. 9-1 (Order, Mar. 2, 2005) (Page ID #344).
Jackson filed a petition for post-conviction relief under Ohio Revised Code § 2953.21 on April 16, 2004. R. 9-2 (Post-Conviction Pet. at 1) (Page ID #345). Jackson asserted one ground for relief, that he was denied effective assistance of counsel under the United States Constitution and the Ohio Constitution. Id. at 5 (Page ID #349). Jackson’s petition included an affidavit from his trial counsel stating that he had “reviewed the affidavit of Kaci Chaffin” and “[t]hat had Kaci Chaffin been discovered or otherwise identified there is a reasonable probability that her testimony, as set forth in the affidavit, would have altered the theory of the defense; she would have been called as a defense witness; and that said testimony would have -resulted in Mr. Jackson not being convicted of Aggravated Murder.” R. 9-2 (Holtschulte Aff. ¶¶ 9-10) (Page ID # 354). Jackson’s trial counsel also admitted that he had reviewed only the discovery provided by the prosecution regarding potential eyewitnesses to the shooting and “no action was taken to search for other witnesses that had not been identified, discovered or voluntarily come forward.” Id. ¶¶ 6, 8 (Page ID # 353-54).
On June 22, 2009, the Ohio trial court denied Jackson’s petition without a hearing but issued an opinion on the merits. R. 9-2 (Journal Entry, June 22, 2009 at 5) (Page ID #365). Jackson appealed, and on November 9, 2009, the Ohio Court of Appeals held that the trial court did not abuse its discretion in denying Jackson’s *459 post-conviction petition or in denying the petition without a hearing. R. 9-2 (Op., Nov. 9, 2009 at 18) (Page ID # 586). The Ohio Supreme Court denied Jackson’s appeal in a one-sentence entry. R. 9-2 (Entry, Mai'. 10, 2010) (Page ID # 577) (stating that “the Court denies leave to appeal and dismisses the appeal as not involving any substantial constitutional question”).
Jackson filed a petition for a writ of habeas corpus in the United States District Court for the Southern District of Ohio on January 24, 2011. R. 2 (Pet. for a Writ of Habeas Corpus) (Page ID #2). He asserted one ground for relief:
Ground One: An attorney’s pretrial investigation that fails to uncover an exculpatory, case-determinative eyewitness is not reasonable and denies a criminal defendant the effective assistance of counsel. Strickland v. Washington (1984), 466 U.S. 668 [104 S.Ct. 2052, 80 L.Ed.2d 674]; Sixth Amendment to the United States Constitution.
Id. at 14 (Page ID # 15). The Magistrate Judge recommended denying the petition. R. 21 (Report and Recommendation at 25) (Page ID # 1306). On March 14, 2014, the district court adopted the Magistrate Judge’s report and recommendation and granted Jackson a certificate of appealability. R. 25 (Op. and Order at 1, 5) (Page ID # 1321,1325).
Jackson timely appeals the district court’s decision, and “asks this Court to reverse the district court’s denial of his petition for federal habeas corpus relief’ based on a violation of his right to effective assistance of counsel. Appellant Br. at 12.
II. ANALYSIS
A. Standard of Review
We review the legal conclusions of the district court de novo and its factual findings for clear error in an appeal from the denial of habeas relief. Scott v. Houk, 760 F.3d 497, 503 (6th Cir.2014). Neither party disputes that the Ohio courts adjudicated Jackson’s ineffective-assistance-of-counsel claim on the merits in the post-conviction proceedings. Appellant Br. at 3, 9-10; Appellee Br. at 15; see also R. 9-2 (Judgment Entry, June 22, 2009 at 4) (Page ID #364); R. 9-2 (Op., Ñov. 9, 2009 at 11-18) (Page ID #529-36). Therefore, the more deferential standard of review of the Antiterrorism and Effective Death Penalty Act (“AEDPA”) applies. 28 U.S.C. § 2254(d) (2012). AED-PA directs that a federal court cannot grant a petition for a writ of habeas corpus unless the state court’s adjudication on the merits:
(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.
Id. Only “holdings, as opposed to the dicta, of [the Supreme] Court’s decisions as of the time of the relevant state-court decision” constitute “clearly established Federal law.” Williams v. Taylor, 529 U.S. 362, 412, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). Circuit court precedent “cannot form the basis for habeas relief under AEDPA.” Parker v. Matthews, — U.S. -, 132 S.Ct. 2148, 2155, 183 L.Ed.2d 32 .(2012).
The “ ‘contrary to’ clause” applies “if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially *460 indistinguishable facts.” Williams, 529 U.S. at 412-13, 120 S.Ct. 1495. “[T]he 'unreasonable application’ prong • of § 2254(d)(1) permits a federal habeas court to ‘grant the writ if the state court identifies the correct governing legal principle from this Court’s decisions but unreasonably applies that principle to the facts’ of petitioner’s case.” Wiggins v. Smith, 539 U.S. 510, 520, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (quoting Williams, 529 U.S. at 413, 120 S.Ct. 1495). Unreasonable application means “more than incorrect or erroneous.” Id. “A state court’s determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court’s decision.” Harrington v. Richter, 562 U.S. 86, 131 S.Ct. 770, 786, 178 L.Ed.2d 624 (2011) (internal quotation marks omitted). Moreover, § 2254(d)(1) “does not require state courts to extend [Supreme Court] precedent or license federal courts to treat the failure to do so as error.” White v. Woodall, — U.S. -, 134 S.Ct. 1697, 1706, 188 L.Ed.2d 698 (2014). As the Supreme Court has recently made clear, “[i]f this standard is difficult to meet, that is because it was meant to be.” . Richter, 131 S.Ct. at 786.
B. Strickland Test
The Supreme Court’s holding in Strickland v. Washington provides the “clearly established Federal law” relevant to this case. Williams, 529 U.S. at 391, 120 S.Ct. 1495 (internal quotation marks omitted). To prevail on an ineffective-assistance-of-counsel claim, a defendant must show two things. “First, the defendant must show that counsel’s performance was deficient” as measured by “an objective standard of reasonableness.” Strickland v. Washington, 466 U.S. 668, 687-88, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). “This requires showing that counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.” Id. at 687, 104 S.Ct. 2052. In assessing the first factor, “|j]udi-cial scrutiny of counsel’s performance must be highly deferential.” Id. at 689, 104 S.Ct. 2052. As the Supreme Court has elaborated:
A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel’s challenged conduct, and to evaluate the conduct from counsel’s perspective at the time. Because of the difficulties inherent in making the • evaluation, a court must indulge a strong presumption that counsel’s conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that,, under the circumstances, the challenged action might be considered sound trial strategy.
Id. (internal quotation marks omitted).
“Second, the defendant must show that the deficient performance prejudiced the defense.” Id. at 687, 104 S.Ct. 2052. This means that “[t]he defendant must show that there is a reasonable probability that, but for counsel’s unprofessional errors, the result of the proceeding would have been different.” Id. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.” Id. This “requires a substantial, not'just conceivable, likelihood of a different result.” Cullen v. Pinholster, 563 U.S. 170, 131 S.Ct. 1388, 1403, 179 L.Ed.2d 557 (2011) (internal quotation marks omitted).
When combined with AEDPA review, the Strickland test becomes even harder to meet. “The standards created by Strickland and § 2254(d) are both highly deferential, and when the two apply in *461 tandem, review is doubly so. The Strickland, standard is a general one, so the range of reasonable applications is substantial.” Richter, 131 S.Ct. at 788 (internal quotation marks and citations omitted). Under § 2254(d), “[t]he question is whether there is any reasonable argument that counsel satisfied Strickland’s deferential standard.” Id. at 788.
C. Counsel’s Performance
Because the Ohio Supreme Court denied Jackson’s petition without comment, the Ohio Court of Appeals’ opinion on Jackson’s petition for post-conviction relief “is the last state court to adjudicate the claim on the merits” and is therefore “[t]he relevant state court decision.” Pudelski v. Wilson, 576 F.3d 595, 607 (6th Cir.2009). The Ohio Court of Appeals based its conclusion that Jackson’s trial counsel had adequately investigated Jackson’s case on the following factors: (1) that Jackson’s trial counsel did interview Jackson, Jackson’s wife, and Jackson’s psychiatrist; (2) that Jackson’s trial counsel’s decision to review only the state’s discovery materials “and not investigate outside of the evidence contained in these filings [] was reasonable in light of all the evidence provided by the State during discovery”; and (3) that because Jackson’s trial counsel’s decision to formulate “a theory of defense predicated upon Jackson’s desire to commit suicide and his alleged mental defect” was reasonable in light of the investigation he did perform, he had “no duty to prepare for alternative theories” such as accidental death. R. 9-2 (Op., Nov. 9, 2009 at 11-12) (Page ID # 529-30) (internal quotation marks omitted).
Jackson argues that the Ohio Court of Appeals unreasonably applied Strickland to conclude that his trial counsel did not perform deficiently. Appellant Br. at 14. He argues that his trial counsel’s failure to conduct any investigation beyond reviewing the list and testimony of witnesses to the shooting disclosed by the prosecution, and interviewing Jackson, Jackson’s wife, and Jackson’s psychiatrist, was objectively unreasonable. Id. at 14-15. Rather, he argues that the “known evidence” from the prosecution’s discovery and the circumstances of the shooting would have led a reasonable attorney independently “to see if further eyewitnesses could be discovered among the class of Heartland ... residents or employees who were on the premises that day.” Id. at 17. Specifically, he cites two factors — that the prosecution’s discovery discussed “two eyewitnesses to events both right before and right after the shooting” but none to the exact moment of the shooting, and the fact that the shooting took place in broad daylight in the parking lot of the Heartland Nursing Home. Id. If his trial counsel had investigated further, Jackson argues, he likely would have discovered Chaffin because she was working there on the day of the shooting. Id. at 15-16. Alternatively, Jackson argues that even if Jackson’s trial counsel cannot be said to have failed to investigate entirely, the Sixth Circuit “has also recognized that a known class of possible eyewitnesses” — here nursing home residents and employees at Heartland — “should lead an attorney to investigate further,” and cites Bigelow v. Williams, 367 F.3d 562 (6th Cir.2004). Appellant Br. at 18.
1. Failure-to-investigate case law
The Supreme Court in Strickland set forth the following guidance in evaluating failure-to-investigate claims. “[Cjounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness ease, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy *462 measure of deference to counsel’s judgments.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. “In assessing the reasonableness of an attorney’s investigation ,. a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further.” Wiggins, 539 U.S. at 527, 123 S.Ct. 2527 (emphasis added). The Supreme Court in Strickland made clear that the known record evidence includes the defendant’s communications to his counsel: “[t]he reasonableness of counsel’s actions may be determined or substantially influenced by the defendant’s own statements or actions.” Strickland, 466 U.S. at 691, 104 S.Ct. 2052. The thoroughness of a counsel’s investigation in turn influences the reasonableness of strategic choices made on the basis of that investigation. “[Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable.” Strickland, 466 U.S. at 690, 104 S.Ct. 2052. However, “strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.” Id. at 690-91, 104 S.Ct. 2052.
The Supreme Court has cautioned that attorneys do not need to investigate exhaustively every aspect or potential angle of the defendant’s case. “[T]he duty to investigate does not force defense lawyers to scour the globe on the off chance something will turn up; reasonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste.” Rompilla v. Beard, 545 U.S. 374, 383, 125 S.Ct. 2456, 162 L.Ed.2d 360 (2005); see also Richter, 131 S.Ct. at 791 (“The Court of Appeals erred in suggesting counsel had to be prepared for any contingency. Strickland does not guarantee perfect representation, only a reasonably competent attorney.”) (internal quotation marks and citations omitted).
Supreme Court decisions finding ineffective assistance of counsel under Strickland in the failure-to-investigate context fall into two categories. In one line of cases, trial counsel failed to conduct any investigation or perform basic investigative steps such as reviewing known evidence or interviewing known witnesses. See, e.g., Porter v. McCollum, 558 U.S. 30, 39-40, 130 S.Ct. 447, 175 L.Ed.2d 398 (2009) (“Here, counsel did not even take the first step of interviewing witnesses or requesting records.”); Rompilla, 545 U.S. at 383, 125 S.Ct. 2456 (holding that “the lawyers were deficient in failing to examine the court file on Rompilla’s prior conviction,” knowing that the state “intended to seek the death penalty by proving Rompilla had a significant history of felony convictions indicating the use or threat of violence,” including by proving this prior conviction); Williams, 529 U.S. at 395-96, 120 S.Ct. 1495 (holding that defense counsel failed to reasonably investigate mitigating evidence because he “failed to seek prison records recording Williams’ commendations” in prison, positive character “testimony of prison officials,” and “failed even to return the phone call of a certified public accountant who had offered to testify that he had visited Williams frequently” and would speak positively about him); Kimmelman v. Morrison, 477 U.S. 365, 385, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (holding that trial counsel rendered deficient performance because “[Respondent’s lawyer neither investigated, nor made a reasonable decision not to investigate, the State’s case through discovery”).
In another line of cases, evidence in the record suggested fruitful leads that a reasonable attorney would have pursued. In Wiggins, for example, the Supreme Court held that the defendant’s trial counsel had *463 rendered deficient performance because it was objectively unreasonable for them not to investigate “leads” in the presentence investigation report and Department of Social Services records on the defendant’s background that suggested abuse and other facts useful as mitigating evidence in sentencing. 539 U.S. at 525, 123 S.Ct. 2527. See also Porter, 558 U.S. at 40, 130 S.Ct. 447 (“[L]ike the counsel in Wiggins, [counsel] ignored pertinent avenues for investigation of which he should have been aware. The court-ordered competency evaluations, for example, collectively reported Porter’s very few years of regular school, his military service and wounds sustained in combat, and his father’s ‘over-disciplinfe].’ ”).
Bigelow v. Williams, 367 F.3d 562 (6th Cir.2004), the main Sixth Circuit case cited by Jackson, is more fairly characterized as falling within the category of “leads” that should be investigated further, rather than establishing a stand-alone rule that counsel must investigate all potential witnesses in a known class, as Jackson claims. Bigelow had always maintained to his counsel that he had been working in Columbus, Ohio, on the date of the crime, not Toledo, Ohio, where the crime took place. Id. at 564-65. Four days before trial, there was an “evi-dentiary breakthrough” — the appearance of one witness who said he could confirm Bigelow’s alibi. Id. at 572, 574. In light of this development — “the only evidence then available for Bigelow’s defense” — we held that “[ajt a minimum, it would seem that this evidentiary breakthrough would have prompted additional inquiry either by [counsel] or by a publicly-funded investigator” to attempt to locate other witnesses who could corroborate that Bigelow was in Columbus. Id. at 572-73. The other witnesses the court mentioned that Bigelow’s counsel could have investigated were all landscapers who had worked at the house where Bigelow claimed he was working on the day of the crime. . Thus, they did belong in one sense to a class of witnesses. But we did not characterize the holding as establishing an obligation to interview all members of a class of potential witnesses, nor did we actually explicitly hold that Bigelow’s counsel needed to interview all of the other landscapers at the house that day.[1]
2. Assessment of Jackson’s trial counsel’s investigation
Applying AEDPA deference, we hold' that the Ohio Court of Appeals did not unreasonably apply existing Supreme Court precedent to find that Jackson’s trial counsel’s investigative decisions were not objectively unreasonable. This case does not fall into the. first category of cases. Jackson’s trial counsel did not fail to conduct any investigation or fail to review known evidence. He interviewed Jackson, Jackson’s wife, and Jackson!s psychiatrist. R. 9-2 (Holtschulte Aff. ¶ 6) (Page ID #353). Jackson’s trial counsel also “reviewed] ... the investigation information provided in discovery” by the prosecution. Id. Nor were there any known eyewitnesses to the shooting that Jackson’s trial counsel failed to interview. As the district court noted, “[t]his is not a *464 case in which defense counsel deliberately-failed to interview or investigate known witnesses.” R. 25 (Op. and Order at 3) (Page ID # 1323).
Nor does this case clearly fall into the category of cases where a “lead” in the evidence known to trial counsel should have prompted further investigation. On the one hand, the fact that the shooting took place in broad daylight behind a nursing facility presumably full of people would seem to suggest the possibility that someone might have witnessed the actual moment of the shooting. A better attorney would have conducted an independent investigation of the residents and employees at the facility to verify that the prosecution had fully disclosed all witnesses or had conducted a sufficiently thorough investigation. Jackson’s trial counsel might have found Chaffin if he had done so because she was working there that day. Moreover, while Jackson’s trial counsel stated in his affidavit that he reviewed the witnesses and their statements disclosed by the prosecution, the affidavit does not state that he actually personally interviewed any of the witnesses to check the accuracy of the statements disclosed or to see if any witness could suggest other individuals to interview. Under de novo review, we might therefore hold that Jackson’s trial counsel’s decision to limit his investigation was unreasonable.
On the other hand, it is hard to identify a “lead” in the record that should have prompted Jackson’s trial counsel to conduct further independent investigation of possible eyewitnesses. The discovery provided by the prosecution was extensive. As described by the Ohio Court of Appeals, it included “a list of thirty-five (35) witnesses that could be called at trial; copies of police reports and, narratives; [and] copies of the witness statements,” and the “State filed supplemental discovery several times.” R. 9-2 (Op., Nov. 9, 2009 at 11) (Page ID # 529). Detective Ropp testified at trial that he attempted to locate witnesses to the shooting right after it occurred and interviewed and took witness statements that same day. R. 9-3 (Trial Tr. at 285-288) (Page ID # 899-902). Jackson does not argue that anything in the materials disclosed by the prosecution suggested that someone not interviewed by the prosecution had witnessed the exact moment of the shooting. Jackson’s trial counsel’s affidavit states “[t]hat witnesses identified and/or disclosed saw activity immediately before and after the shooting but none stated they saw the actual instant of the shooting.” R. 9-2 (Holtschulte Aff. ¶ 7) (Page ID #353).
No Supreme Court case squarely stands for the proposition that simply reviewing fairly extensive discovery provided by the prosecution about potential witnesses— when nothing in that evidence suggests further investigation could prove fruitful— is objectively unreasonable in and of itself. And the cases from other circuits cited by Jackson do not stand for this proposition. Appellant. Br. at 17-18. Rather, those cases fall within the category of cases in which record evidence contained “leads” that a reasonable attorney would have investigated further. See, e.g., Code v. Montgomery, 799 F.2d 1481, 1484 (11th Cir.1986) (holding that counsel failed to investigate adequately because he “did not contact both of the alibi leads [the defendant] had provided him”); Nealy v. Cabana, 764 F.2d 1173, 1177-78 (5th Cir.1985) (finding ineffective assistance of counsel where counsel failed to investigate known potential alibi witnesses); Thomas v. Lookhart, 738 F.2d 304, 308 (8th Cir.1984) (holding that counsel failed to investigate adequately because counsel only “review[ed] the investigative file of the prosecuting attorney” in combination with the fact that the defendant “maintained he was *465 innocent” and “[the defendant] and his mother testified that he gave [counsel] the names of three alibi witnesses”; distinguishing the case “from cases in which the defendant did not provide counsel with any information casting doubt on the events as portrayed by the files of the prosecuting attorney”); Crisp v. Duckworth, 743 F.2d 580, 583-84 (7th Cir.1984) (finding ineffective assistance of counsel in part because counsel did not interview three known witnesses to the shooting and he “failed to interview or call any of the persons [the defendant] said could corroborate his story”). In any event, these cases were all decided before AEDPA became applicable and do not constitute “clearly established Federal law, as determined by the Supreme Court.” 28 U.S.C. § 2254(d)(1).
No other record evidence can be characterized as a “lead” that should have prompted Jackson’s trial counsel independently to search for other eyewitnesses to the actual moment of the shooting. Unlike the defendant in Bigelow, for example, Jackson does not claim that he told his trial counsel that the shooting was accidental, which clearly would have made it more necessary to search for other possible eyewitnesses. Jackson maintained that he could not remember what happened at the time of the shooting. R. 9-4 (Trial Tr. at 95) (Page ID # 1026). Jackson’s mother did not tell the bystanders who came to her aid immediately after the shooting or the police that the shooting was accidental; all she said was that her son had shot her. Id. at 54 (Page ID # 985).
In sum, under existing Supreme Court precedent, it is difficult to conclude that Jackson’s trial counsel’s decision not to seek independently other eyewitnesses to the shooting was so objectively unreasonable such that “fairminded jurists” would not disagree, particularly given the doubly deferential review of Strickland claims. Richter, 131 S.Ct. at 786. Based on the investigation Jackson’s trial counsel undertook, his decision to pursue the defense of not guilty by reason of insanity was also not objectively unreasonable. R. 9-2 (Holtschulte Aff. ¶6) (Page ID #353). We therefore do not reach the second prong of the Strickland analysis.
III. CONCLUSION
For the reasons set forth above, we AFFIRM the judgment of the district court.

. Jackson also cites Poole v. MacLaren, 547 Fed.Appx. 749, 751 (6th Cir.2013), cert. denied, — U.S. -, 135 S.Ct. 122, 190 L.Ed.2d 94 (2014), for the proposition that a petitioner could successfully establish ineffective assistance for failure to find an initially unknown witness if facts established by the petitioner indicated that the witness “could have been found by counsel prior to Petitioner’s trial.” Appellant Br. at 20 (quoting Poole, 547 Fed.Appx. at 755). It is true that Pooh did preserve the possibility that counsel could be ineffective for failing to find and interview an unknown witness, but the decision does not specify what those additional facts might be.